WO

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

UNITED STATES OF AMERICA  
v.  

Demetrias Lynn Yazzie

***ORDER OF DETENTION PENDING TRIAL***

Case Number:  CR13-08123-001-PCT-PGR

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held. I conclude that the following facts are established: *(Check one or both, as applicable.)*

☒ by clear and convincing evidence the defendant is a danger to the community and require the detention of the defendant pending trial in this case.

☒ by a preponderance of the evidence the defendant is a flight risk and require the detention of the defendant pending trial in this case.

## PART I -- FINDINGS OF FACT

☐ (1)  There is probable cause to believe that the defendant has committed

   ☐ a drug offense for which a maximum term of imprisonment of ten years or more is prescribed in 21 U.S.C. §§ 801 et seq., 951 et seq, or 46 U.S.C. App. § 1901 et seq.

   ☐ an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332(b).

   ☐ an offense listed in 18 U.S.C. § 2332b(g)(5)(B) (Federal crimes of terrorism) for which a maximum term of imprisonment of ten years or more is prescribed.

   ☐ an offense involving a minor victim prescribed in 18 U.S.C. 3559(f)(3), ARS 13-3623(A)(1) and 3359(f)(1).[1]

☐ (2)  The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

### Alternative Findings

☒ (1)  There is a serious risk that the defendant will flee; no condition or combination of conditions will reasonably assure the appearance of the defendant as required.

☒ (2)  No condition or combination of conditions will reasonably assure the safety of others and the community.

☐ (3)  There is a serious risk that the defendant will (obstruct or attempt to obstruct justice) (threaten, injure, or intimidate a prospective witness or juror).

☐ (4)  _____

## PART II -- WRITTEN STATEMENT OF REASONS FOR DETENTION
*(Check one or both, as applicable.)*

☒ (1)  I find that the credible testimony and information submitted at the hearing establish by clear and convincing evidence as to danger that:
Based upon the nature of the alleged offenses. Defendant, age twenty, in an unprovoked attack beat a four year old little girl to death for no apparent reason. Defendant has confessed to the crime and therefore the evidence of defendant's guilt is great. Defendant has committed prior acts of domestic violence against his parents.

---

[1] Insert as applicable: Title 18, § 1201 (kidnaping), § 1591 (sex trafficking), § 2241 (aggravated sexual abuse), § 2242 (sexual abuse), § 2244(a)(1)(abusive sexual contact. § 2245 (offenses resulting in death), § 2251 (sexual exploitation of children), § 2251A (selling or buying of children), § 2252 et seq. (certain activities relating to material involving sexual exploitation of minors), § 2252A et seq. (certain activities relating to material constituting or containing child pornography), § 2260 (production of sexually explicit depictions of minors for importation into the U.S.), § 2421 (transportation for prostitution or a criminal sexual activity offense), § 2422 (coercion or enticement for a criminal sexual activity), § 2423 (transportation of minors with intent to engage in criminal sexual activity), § 2425 (use of interstate facilities to transmit information about a minor).

☒ (2) I find by a preponderance of the evidence as to risk of flight that:

☐ The defendant has no significant contacts in the District of Arizona.

☒ The defendant has insufficient resources in the United States from which he/she might make a bond reasonably calculated to assure his/her future appearance.

☐ The defendant has a prior criminal history.

☐ There is a record of prior failure(s) to appear in court as ordered.

☐ The defendant attempted to evade law enforcement contact by fleeing from law enforcement.

☒ The defendant is facing a minimum mandatory of <u>thirty (30)</u> years incarceration and a maximum of <u>three (3) life</u> terms.

☒ The defendant does not dispute the information contained in the Pretrial Services Report, except:
 None.

☒ In addition:
 At the detention hearing, pursuant to 18 U.S.C. §3771(a)(4) & (e) the victim's grandfather, Jimmy Dugi, a retired Navajo Nation tribal prosecutor from Tuba City, urged the Court to detain the defendant as a "bad Indian" relying upon the provisions of the Navajo Treaty of 1868. In pertinent part Article 1 of the Treaty states: "If bad men among the Indians shall commit a wrong or depredation upon the person or property of any one, white, black, or Indian, subject to the authority of the United States and at peace there-with, the Navajo tribe agree that they will, on proof made to their agent, and on notice by him, deliver up the wrongdoer to the United States, to be tried and punished according to its laws..." *See* Navajo Treaty of June 1, 1868, Art. 1, 15 Stat. 667. Mr. Dugi urges that because the defendant is violent and a "bad Indian" (ie bad man) the Treaty mandates the defendant's removal from the reservation and incarceration pending trial. The issue raised by Mr. Dugi appears to be one of first impression. Does the federal government have a treaty obligation to the individual members of the Navajo Nation guaranteeing certain rights in this criminal matter separate and apart from those found in the Bail Reform Act? *See* 18 U.S.C. §3141 et seq. Clearly the Treaty remains in full force and effect. Tsosie v. United States, 825 F.2d 393 (Fed. Cir. 1987). The Court has been unable to locate any authority directly supporting or rejecting Mr. Dugi's position. Apparently during the Treaty negotiations in 1868 Lt. General Sherman on behalf of the federal government indicated that in exchange for the Navajo living in peace "... [t]he government will stand between you and other Indians and Mexicans." Tsosie, 825 F.2d at 400 n 2. It appears logical that the term "bad men" found in the Treaty would equate with a finding of danger by clear and convincing evidence under the Bail Reform Act. But Article 1 of the Treaty indicates the "Navajo tribe" will "deliver up the wrongdoer to the United States." Therefore, the Court concludes that should the Treaty of 1868 convey rights greater than those found pursuant to the Bail Reform Act, it is for the Navajo Nation to assert those rights before the Court rather than individual Navajo tribal members. The Court's finding is to be distinguished from monetary treaty obligations which may flow to individual tribal members under the Treaty. Tsosie 825 F.2d at 403. Although the defendant upon his indictment was brought before the Court pursuant to a federal arrest warrant there is nothing in the record to indicate the Navajo Nation is seeking removal of the defendant from the reservation and his incarceration pending trial.

 Defendant, during the detention hearing, initially sought to be released from custody and returned to the reservation to reside with his parents. The PTS report indicates that while defendant has no formal criminal record defendant's parents were the victims of prior domestic violence by defendant. Also, as noted in the PTS report, defendant is currently in a relationship with a minor female high school student which has produced an eight month old child. The minor high school student is the sister of the alleged victim in this matter. Defendant has two bothers and two sisters, all minors, who reside in the parental home. Defendant's father has an extensive criminal record. The PTS Officer concluded defendant's request to return to the reservation and reside with his parents was not appropriate. The Court concurs. When the proposed placement with defendant's parents was rejected defendant suggested placement with his grandmother in Hard Rock. Apparently defendant's grandmother has no criminal record. The defendant is accused of beating a four year old female child to death for no apparent reason. Having visited Hard Rock in the past, and from other cases, the Court is aware of Hard Rock's remoteness and that it is a very small community with small children present. No information has been presented to the Court as to whether there are minor children in the grandmother's home or nearby. The Court will not place other children in the community in danger by releasing defendant.

The Court incorporates by reference the findings of the Pretrial Services Agency which were reviewed by the Court at the time of the hearing in this matter.

### PART III -- DIRECTIONS REGARDING DETENTION

The defendant is committed to the custody of the Attorney General or his/her designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

### PART IV -- APPEALS AND THIRD PARTY RELEASE

IT IS ORDERED that should an appeal of this detention order be filed with the District Court, it is counsel's responsibility to deliver a copy of the motion for review/reconsideration to Pretrial Services at least one day prior to the hearing set before the District Court.

IT IS FURTHER ORDERED that if a release to a third party is to be considered, it is counsel's responsibility to notify Pretrial Services sufficiently in advance of the hearing before the Court to allow Pretrial Services an opportunity to interview and investigate the potential third party custodian.

DATED this 4th day of June, 2013.

_____
Mark E. Aspey
United States Magistrate Judge